UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MELODY CUNNINGHAM and FRUNWI MANCHO, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> LYFT, INC., LOGAN GREEN, and JOHN ZIMMER, <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * Civil Action No. 1:19-cv-11974-IT <br> * <br> * <br> * <br> * <br> * |

MEMORANDUM AND ORDER

March 27, 2020

TALWANI, D.J.

Plaintiffs Melody Cunningham and Frunwi Mancho bring claims, on their own behalf and on behalf of drivers who have worked in Massachusetts for Defendant Lyft, Inc. (Lyft), based on Lyfts' alleged misclassification of drivers as independent contractors.[1] Defendants have filed a Motion to Compel Arbitration and Stay Proceedings Pending Arbitration [#16], pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-4, seeking an order compelling Plaintiffs submit any claims they are asserting here to individual, non-class arbitration and staying all further proceedings pending arbitration. Defs' Mot. to Compel Arbitration [#16]. For the following reasons, Defendants' Motion to Compel Arbitration and Stay Proceedings Pending Arbitration [#16] is DENIED.

---

[1] Plaintiffs also name Defendants Logan Green, as Chief Executive Officer of Lyft, and John Zimmer as President of Lyft.

I.      Background

Lyft is a ridesharing company that uses a smartphone application ("Lyft App" or "App") to allow customers to hail drivers. Ayanbule Decl. ¶ 2 [#18]. To become a Lyft driver, an individual must register, download the App, and agree to Lyft's Terms of Service ("Terms"). Id. ¶ 3.

Lyft updated its Terms on February 6, 2018. Id. ¶ 7. All drivers who opened the App on that day or subsequent days were presented with the following screen:



Id. Drivers could not continue to drive for Lyft until they clicked the "I accept" button. Id. ¶ 8.

In Lyft's Terms, the agreement states, in relevant part:

> PLEASE BE ADVISED: THIS AGREEMENT CONTAINS PROVISIONS
> THAT GOVERN HOW CLAIMS YOU AND LYFT HAVE AGAINST EACH
> OTHER CAN BE BROUGHT. . . THESE PROVISIONS WILL, WITH
> LIMITED EXCEPTION, REQUIRE YOU TO SUBMIT CLAIMS YOU HAVE
> AGAINST LYFT TO BINDING AND FINAL ARBITRATION ON AN
> INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER . . . AS A

> DRIVER OR DRIVER APPLICANT, YOU HAVE AN OPPORTUNITY TO
> OPT OUT OF ARBITRATION WITH RESPECT TO CERTAIN CLAIMS. . .

Ex. A at 1 (Ayanbule Decl.) [#18-1].

The agreement also contained a hyperlink in a different color allowing drivers to drop directly to Section 17, the section in the Terms containing the arbitration provision. Id. Section 17 states, in relevant part:

> YOU AND LYFT MUTUALLY AGREE TO WAIVE OUR RESPECTIVE RIGHTS TO RESOLUTION OF DISPUTES IN A COURT OF LAW BY A JUDGE OR JURY AND AGREE TO RESOLVE ANY DISPUTE BY ARBITRATION, as set forth below. This agreement to arbitrate ("Arbitration Agreement") is governed by the Federal Arbitration Act . . . ANY ARBITRATION UNDER THIS AGREEMENT WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED. Except as expressly provided below, this Arbitration Agreement applies to all Claims (defined below) between you and Lyft, including our affiliates, subsidiaries, parents, successors, and assigns, and each of our respective officers, directors, employees, agents, or shareholders . . .
>
> Except as expressly provided below, ALL DISPUTES AND CLAIMS BETWEEN US. . .SHALL BE EXCLUSIVELY RESOLVED BY BINDING ARBITRATION SOLELY BETWEEN YOU AND LYFT. These Claims include but are not limited to, any dispute, claim, or controversy, whether based on past, present, or future events, arising out of or relating to: this Agreement and prior versions thereof . . . the Lyft Platform, the Services, any other goods or services made available through the Lyft Platform, your relationship with Lyft . . . state or federal wage-hour law . . ."

Ex. A at § 17(a) (Ayanbule Decl.) [#18-1].[2]

The agreement also includes a "Prohibition of Class Actions and Non-Individualized Relief," which reads as follows:

> YOU UNDERSTAND AND AGREE THAT YOU AND LYFT MAY EACH BRING CLAIMS IN ARBITRATION AGAINST THE OTHER ONLY IN AN INDIVIDUAL CAPACITY AND NOT ON A CLASS, COLLECTIVE ACTION, OR REPRESENTATIVE BASIS ("CLASS ACTION WAIVER"). YOU

---

[2] The agreement's other Choice of Law provision reads: "Except as provided in Section 17, this Agreement shall be governed by the laws of the State of California without regard to choice of law principles." Ex. A at § 21 (Ayanbule Decl.) [#18-1].

> UNDERSTAND AND AGREE THAT YOU AND LYFT BOTH ARE
> WAIVING THE RIGHT TO PURSUE OR HAVE A DISPUTE RESOLVED AS
> A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS,
> COLLECTIVE OR REPRESENTATIVE PROCEEDING. . .
>
> The arbitrator shall have no authority to consider or resolve any Claim or issue
> any relief on any basis other than an individual basis. The arbitrator shall have no
> authority to consider or resolve any Claim or issue any relief on a class,
> collective, or representative basis. The arbitrator may award declaratory or
> injunctive relief only in favor of the individual party seeking relief and only to the
> extent necessary to provide relief warranted by that party's individual claims.

Ex. A at § 17(b) (Ayanbule Decl.) [#18-1].

Finally, the agreement also includes two provisions regarding the resolution of disputes over the class action waiver and severability:

> Notwithstanding any other provision of this Agreement, the Arbitration
> Agreement or the AAA Rules, disputes regarding the scope, applicability
> enforceability, revocability or validity of the Class Action Waiver may be
> resolved only by a civil court of competent jurisdiction and not by an arbitrator. In
> any case in which: (1) the dispute is filed as a class, collective, or representative
> action and (2) there is a final judicial determination that the Class Action Waiver
> is unenforceable as to any Claims, then those Claims shall be severed from any
> remaining claims and may be brought in a civil court of competent jurisdiction,
> but the Class Action Waiver shall be enforced in arbitration on an individual basis
> as to all other Claims to the fullest extent possible.
>
> . . .
>
> [I]n the event that any portion of this Arbitration Agreement is deemed illegal or
> unenforceable under applicable law not preempted by the FAA, such provision
> shall be severed and the remainder of the Arbitration Agreement shall be given
> full force and effect.

Ex. A at § 17(b), (h) (Ayanbule Decl.) [#18-1].

Plaintiff Melody Cunningham has been driving for Lyft since June 2013. Cunningham Decl. ¶ 4 [#37-7]. On May 15, 2018, after Lyft updated its terms, Cunningham opened the App and clicked the "I accept" button. Ayanbule Decl. ¶¶ 10-11 [#18]; Ex. B (Ayanbule Decl.) [#18-2]. Cunningham did not opt out of the arbitration agreement. Lieu Decl. ¶ 7 [#19].

Plaintiff Frunwi Mancho has been driving for Lyft since January 2016. Mancho Decl. ¶ 3 [#37-8]. Although the record does not state the date that Mancho opened the App after February 6, 2018, there appears to be no dispute that Mancho also clicked the "I accept" button and did not opt out of the arbitration agreement.

As part of their work, both Mancho and Cunningham picked up customers traveling to or from Logan Airport in Boston. Cunningham Decl. ¶ 6 [#37-7]; Mancho Decl. ¶ 4 [#37-8]. Mancho drove passengers across state lines, including from Haverhill, Massachusetts, to Salem, New Hampshire, and from Logan Airport to Portsmouth, New Hampshire, Mancho Decl. ¶ 4 [#37-8], but Cunningham did not drive passengers across state lines. Lieu Decl. ¶¶ 8-9 [#19].

II.   Procedural History Relevant to the Motion to Compel

Plaintiff Melody Cunningham filed this putative class action, on her own behalf and on behalf of similarly situated Lyft drivers in Massachusetts, under the Massachusetts Wage Act, M.G.L. c. 149, §§ 148, 148B, and M.G.L. c. 151, §§ 1, 1A, and the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., alleging misclassification and non-payment of minimum wage and overtime.

Defendants responded with a Motion to Compel Arbitration and Stay Proceedings [#16], and Cunningham subsequently amended her complaint to add Frunwi Mancho as a named plaintiff. Am. Compl. [#61]. The parties agreed that Defendants' Motion [#16] applied to Plaintiff Mancho's claims and did not need to be refiled. Stipulation [#64].[3]

---

[3] While the Motion [#16] was pending, Plaintiffs amended their complaint to add a claim under the Massachusetts Earned Sick Time Law, M.G.L. c. 149, § 148C. Second Am. Compl. [#89]. Because Defendants have not yet an opportunity to respond to the Second Amended Complaint [#89], the court does not consider Plaintiffs' new allegations here.

5

III. Analysis

Defendants seek to compel arbitration of Plaintiffs' claims under the Federal Arbitration Act ("FAA"). Defs' Mem. in Support of Mot. to Compel Arbitration ("Defs' Mem.") 6-7 [#17]. They argue further that if the FAA does not apply, arbitration must still be compelled under Massachusetts law. Defs' Reply in Support of Mot. to Compel Arbitration ("Defs' Reply") 8-9 [#52].

Plaintiffs oppose arbitration on the ground that Plaintiffs and the class they seek to represent fall under the transportation worker exemption to the FAA. Pls' Opp'n to Mot. to Compel Arbitration ("Pls' Opp'n") 7-14 [#37]. Plaintiffs argue further that Massachusetts prohibits enforcement of arbitration agreements containing class action waivers. Id. at 17-18.[4]

---

[4] Plaintiffs also contend the court may not compel their claim for public injunctive relief to arbitration and that the court may not compel their claims against the individual Defendants to arbitration because they are not signatories to the agreement and the claims against them are not covered by the arbitration agreement. The court has previously rejected Plaintiffs' claim that the statutes on which they are suing allow for public injunctive relief, Mem. & Order [#88] (denying Motion for Injunctive Relief [#4]) and finds no further discussion of the issue needed here.

The court also rejects Plaintiffs' argument that the claims against the individual Defendants should proceed differently than the claims against Lyft. An arbitration agreement may cover claims against other parties even if those parties did not sign the agreement. See e.g. Grand Wireless Inc. v. Verizon Wireless, Inc., 748 F.3d 1, 10-11 (1st Cir. 2011) ("Since [defendant corporation] could operate only through the actions of its employees, it would have made little sense to have agreed to arbitrate if the employees could be sued separately without regard to the arbitration clause."); Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd., 325 F.3d 54, 62 n.2 (1st Cir. 2003) (stating that non-signatories to arbitration agreement may acquire rights based on state-law contract or agency principles). Here, Lyft's arbitration agreement covers claims arising out of a plaintiff's relationship with Lyft and "each of [Lyft's] respective officers, directors, . . . [or] agents . . . ." Ex. A at § 17(a) (Ayanbule Decl.) [#18-1].

Plaintiffs' contention that this provision does not apply because they are also suing the individual Defendants as "co-founders" makes little sense. While a corporation's president, treasurer, and any officers or agents "having the management of the corporation" may be liable for their corporation's Wage Act violations, see M.G.L. c. 149, § 148B, the statute includes no comparable provision for "co-founder" liability.

6

The court notes at the outset that this is not the first challenge to Lyft's arbitration agreement with its drivers. As Defendants state, this court "has twice enforced arbitration agreements between Lyft and drivers . . . , granting motions to compel arbitration of misclassification claims brought by a putative class of Massachusetts drivers." Defs' Mem. 1 [#17] (citing Wickberg v. Lyft, Inc., 356 F.Supp. 3d 179 (D.Mass. 2018), and Bekele v. Lyft, Inc., 199 F.Supp. 3d 284 (D. Mass. 2016), *aff'd* 918 F.3d 181 (1st Cir. 2019)). But while Defendants contend that "[t]here is no sound basis for this Court to depart from those rulings," id., those rulings did not address the arguments Plaintiffs raise here. Moreover, as no class has been certified, Plaintiffs are not barred by the fact that other plaintiffs did not raise these arguments in the earlier actions.

Accordingly, the court turns to the dispute here.

A. The Federal Arbitration Act

The Federal Arbitration Act's substantive provisions have been found to reflect "a liberal federal policy favoring arbitration," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), such that courts "must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (internal citations omitted). But while the court's power to stay litigation and compel arbitration under the FAA "may be considerable, it isn't unconditional." New Prime Inc. v. Oliveira, 139 S. Ct. 532, 537 (2019). Instead, an "antecedent statutory provision," Section 1 of the FAA, "limit[s] the scope of the court's powers." Id. That section exempts from FAA coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Accordingly, even where parties' private agreement "may be crystal clear and require arbitration of every

7

question under the sun," the court must determine "whether § 1's 'contracts of employment' exclusion applies before ordering arbitration." New Prime Inc., 139 S. Ct. at 537; see also id. at 544 (finding that the exclusion for employment contracts for workers engaged in transportation covered "agreements to perform work," regardless of whether the worker is an employee or independent contractor, and affirming First Circuit's denial of motion to compel arbitration).

Here, Plaintiffs claim that as drivers transporting paying passengers, including airport pick-ups and riders going to nearby states, they are transportation workers engaged in interstate commerce, such that their agreement falls within the Section 1 exemption. Lyft responds that Section 1 only excludes agreements for workers who transport goods, not for workers who transport passengers. Lyft argues further that Plaintiffs were not engaged in interstate commerce because they drove within a local community and their interstate work was incidental. Defs' Mem. at 7-13 [#17]. The court considers each argument in turn.

    1. Transportation of Passengers

Lyft argues that the Supreme Court and virtually every other circuit court has held that Section 1's exemption is limited to workers who transport goods. The case law is not so clear.

Prior to the Supreme Court's decision in Circuit City, the lower courts were faced with the question of whether the Section 1 exemption covered all employees or only transportation workers. See Craft v. Campbell Soup Co., 177 F.3d 1083, 1085 (9th Cir. 1998) ("[c]ourts have developed two interpretations of these provisions: (1) Congress did not intend for the FAA to apply to any contracts; and (2) Congress intended for the FAA to apply to all employment contracts, except for the contracts of employees who actually transport people or goods in interstate commerce"). In Circuit City Stores, Inc. v. Adams, 194 F.3d 1070 (9th Cir. 1999), the Ninth Circuit concluded that all employment contracts were excluded from the FAA. The

Supreme Court reversed, adopting a "narrow construction" that the Section 1 exemption covered only transportation workers and not the "broader construction" or "sweeping, open-ended construction" that it covered all employees "engaged in interstate commerce." Circuit City, 532 U.S. at 118.

Circuit City and each of the earlier appellate decisions on which Defendants rely addressed whether the exemption excluded contracts of non-transportation workers and did not address the nuances between different types of transportation workers. See Circuit City, 532 U.S. at 110 (identifying the employee as a sales counselor at national electronics store); Paladino v. Avnet Comput. Techs. Inc., 134 F.3d 1054, 1060-61 (11th Cir. 1998) (worker providing technical support to computer system salespeople); O'Neil v. Hilton Head Hosp., 115 F.3d 272, 274 (4th Cir. 1997) (respiratory therapist at a hospital); Rojas v. TK Communs., 87 F.3d 745, 748 (5th Cir. 1996) (disc jockey at radio station); Matthews v. Rollins Hudig Hall Co., 72 F.3d 50, 53 n.3 (7th Cir. 1995) (consultant at a brokerage firm); Asplundh Tree Expert Co. v. Bates, 71 F.3d 592, 600-01 (6th Cir. 1995) (controlling shareholder and chairman of utility company); Dickstein v. DuPont, 443 F.2d 783, 785 (1st Cir. 1971) (representative at member of New York Stock Exchange); see also Brennan v. King, 139 F.3d 258, 264 n.5 (1st Cir. 1998) (university professor).

The Supreme Court's discussion in Circuit City of who might or might not be considered a transportation worker was limited. The Court explained that lower courts had generally concluded that the "exclusion provision is limited to transportation workers, defined, for instance, as those workers 'actually engaged in the movement of goods in interstate commerce,'" 532 U.S. at 112 (citing Cole v. Burns Intern. Sec. Servs., 105 F.3d 1465, 1471 (D.C. Cir. 1997)) (emphasis added) -- without adopting that definition itself. Notably, in subsequent decisions, the

9

Supreme Court has not included the reference to "goods." See New Prime Inc., 139 S. Ct. at 538 ("'Section 1 exempts from the [FAA] . . . contracts of employment of transportation workers'") (quoting Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001)); E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 289 (2002) ("Employment contracts, except for those covering workers engaged in transportation, are covered by the FAA") (emphasis added).

The Court in Circuit City also referenced Congress's "demonstrated concern with transportation workers and their necessary role in the free flow of goods, . . . reserving for itself more specific legislation for those engaged in transportation." 532 U.S. at 121. The Court continued in the very next sentence to note "such legislation" for those engaged in transportation "was soon to follow [enactment of the FAA], with the amendment of the Railway Labor Act in 1936 to include air carriers and their employees." Id. (citing 49 Stat. 1189, 45 U.S.C. §§ 181–188). Importantly, however, the Railway Labor Act ("RLA") "purported to resolve disputes between carriers and their employees and . . . defined 'carrier' to include 'sleeping car company[ies],' which are railway passenger cars." Singh v. Uber Techs. Inc., 939 F.3d 210, 221 (3d Cir. 2019) (footnote and citations omitted). Accordingly, the RLA amendment to which the Court referred covered those engaged in transportation of goods and passengers.

In Singh, on which Plaintiffs rely, the Third Circuit characterized the reference to "goods" in Circuit City to be "dicta." 939 F.3d at 222. The Third Circuit noted further that in Lenz v. Yellow Transp., Inc., 431 F.3d 348 (8th Cir. 2005), the court's reference to transportation workers being engaged in the movement of goods in interstate commerce was followed by a quote to another circuit court's statement that "'[n]umerous courts' have defined 'transportation workers' to include 'bus drivers and truck drivers.'" Singh, 939 F.3d at 224 n.8 (quoting Lenz, 431 F.3d at 351) (quoting Am. Postal Workers Union v. United States Postal

10

Serv., 823 F.2d 466, 473 (11th Cir. 1987)). The Singh court explained that this "seeming contradiction simply demonstrates that the Lenz court, like all of the courts to paraphrase Circuit City's "goods" language in similar circumstances, did not have the question of passengers versus cargo before it, and simply used "goods" as a convenient shorthand to discuss interstate commerce." Id. This court agrees and similarly finds the First Circuit's mention of "goods" in Dickstein and Brennan – cases that involved employees who were not transportation workers of any kind -- to be dicta that does not dispose of this case. See Dedham Water Co., Inc. v. Cumberland Farms Dairy Inc., 972 F.2d 453, 459 (1st Cir. 1992) (stating that *obiter dictum* – observations relevant but not essential to the legal questions before the court – are "nether the law of the case nor the stuff of binding precedent.").[5]

The Singh Court considered closely whether there was a basis in the FAA statutory scheme to distinguish between transportation workers who transport goods and those who transport passengers. The Court began with its own prior case law, where an *en banc* panel had affirmed two earlier decisions finding that contracts for bus line employees fell under the Section 1 exemption because bus line employees are "directly engaged in the channels of interstate transportation *just as are railroad workers.*" 939 F.3d at 220 (quoting Tenney Eng'g, Inc. v. United Elec. Radio & Machine Workers of Am., Local 437, 207 F.2d 450, 453 (3d Cir. 1953)) (emphasis added in Singh).

The Third Circuit turned next to the statutory text. The Court noted that "nothing" in Section 1 "suggests that it is limited to those who transport goods,to the exclusion of those who

---

[5] Similarly, this court's discussion of the transportation of goods in Austin v. Doordash, Inc. does not support Lyft's argument as Austin specifically dealt with a driver who transported goods, not passengers. 2019 WL 4804781 at *4 (D. Mass. Sept. 30, 2019). The court did not consider whether Section 1 applied to drivers who transport passengers, as it does today. Id.

11

transport passengers." Id. at 221. The Court found instead that "the text indicates the opposite," finding that transportation workers "includes those workers that are engaged in foreign or interstate commerce in a manner similar to seamen and railroad employees." Id. This court finds Singh to be persuasive.

Lyft argues that "seamen and railroad employees" are "much more directly engaged in interstate commerce," Defs' Reply 4 [#52] (quoting Wallace v Grubhub Holdings Inc., 2019 WL 1399986 at *4 (N.D. Ill. Mar. 28, 2019)), than a driver transporting passengers. But as noted above, seamen and railroad employees transport not just goods in interstate commerce, but also passengers. Defendants offer neither caselaw, other statutory schemes, or legislative history supporting different considerations for arbitration for seamen and railroad employees who transport goods and those who transport passengers.

In sum, the court finds no basis in the statute or in precedent that limits Section 1 to workers who transport goods and that categorically excludes workers who transport passengers as Lyft contends. The court must therefore move onto Lyft's second argument why Section 1 doesn't apply: that Cunningham and Mancho were not engaged in interstate commerce.

2. Engaged in Interstate Commerce

Defendants additionally argue that Plaintiffs were not engaged in interstate commerce and thus excluded from coverage under the FAA because they transported customers "intrastate," Defs' Mem. 12 [#17], and "rarely crossed state lines." Defs. Supp. Mem. 8-9 [#63]. See also Defs. Reply 5-6 [#52] (stating that Mancho only "drove a few miles over the Massachusetts border to Salem and Portsmouth, New Hampshire"). Plaintiffs argue that the passengers Plaintiffs transport are "within the flow of interstate commerce" when they pick up or drop off passengers at airports, train stations, or bus terminals. Pls' Opp'n at 11-12, n.11 [#37].

A worker can be engaged in interstate commerce even if he doesn't personally cross a state border. See Palcko v. Airborne Express, Inc., 372 F. 3d 588, 593 (3d Cir. 2004) (holding supervisor of drivers of package transportation and delivery company engaged in interstate commerce); Waithaka v. Amazon.com, Inc., 404 F.Supp.3d 335 (D. Mass. 2019) (finding last mile delivery driver engaged in interstate commerce), appeal docketed, No. 19-1848 (1st Cir. Aug 30, 2019). In Lenz v. Yellow Transp., Inc., the Eighth Circuit suggested a number of facts to consider in determining whether the contract involves a worker engaged in interstate commerce. 431 F.3d at 351-52. The court finds these factors helpful to consider, with modifications to include the transport of passengers as well as goods, as discussed above:

> [F]irst, whether the employee works in the transportation industry; second, whether the employee is directly responsible for transporting the goods [or passengers] in interstate commerce; third, whether the employee handles goods [or transports passengers] that travel interstate; fourth, whether the employee supervises employees who are themselves transportation workers, such as truck drivers; fifth, whether, like seamen or railroad employees, the employee is within a class of employees for which special arbitration already existed when Congress enacted the FAA; sixth, whether the vehicle itself is vital to the commercial enterprise of the employer; seventh, whether a strike by the employee would disrupt interstate commerce; and eighth, the nexus that exists between the employee's job duties and the vehicle the employee uses in carrying out his duties . . . .

431 F.3d at 352.

Here, Plaintiffs meet a number of the factors listed in Lenz. Plaintiffs works in the transportation industry. The vehicles that Plaintiffs use are central to Plaintiffs' job duties and are vital to Lyft's commercial enterprise. There is also a complete nexus between Plaintiffs' duties and the vehicle they respectively use to carry out those duties.

The critical question appears to this court to be whether they transport passengers that travel interstate. In considering this question, the court compares their role to that of the delivery driver in Austin v. Doordash, Inc., 2019 WL 4804781 (D. Mass. Sept. 30, 2019), appeal

docketed, No. 20-1217 (1st Cir. Feb. 20, 2020). In Austin, this court found that, despite the plaintiff meeting some of the Lenz factors, those factors were outweighed by the lack of evidence that the goods plaintiff delivered for in-state restaurants were themselves continuing in the flow of interstate commerce. 2019 WL 4804781 at *4.

Here, in contrast, Plaintiffs' passengers traveling to or from Logan International Airport, see Cunningham Decl. [#37-7] ¶ 6; Mancho Decl. [#37-8] ¶ 4, are in the "continuity of movement" of a longer trip. Plaintiffs help facilitate that movement, as the first or last leg of the journey, including into or out of Massachusetts. See Walling v. Jackson Paper Co., 317 U.S. 564, 568 (1943) (holding that goods remain in interstate commerce where there is a practical continuity of movement). Therefore, the Lyft drivers are part of the chain of interstate commerce, enabling their passengers to leave or enter Massachusetts. As such, the Lyft drivers are similar to Amazon's last mile delivery driver engaged in interstate commerce in Waithaka, 2019 WL 3938053 at *4, and dissimilar to Doordash's restaurant delivery drivers in Austin.

Plaintiffs' participation in transporting passengers who themselves are continuing in the flow of interstate commerce is not incidental, as Defendants argue. Defs' Reply at 6 [#52]. Defendants cite Hill v. Rent-A-Center, where the court held that an account manager was not a "transportation worker" despite periodically transporting furniture across state lines to out of state customers. 398 F.3d 1286, 1289-90 (11th Cir. 2005). But in Hill, transportation work was incidental to the plaintiff's employment as an account manager; whereas here, Plaintiffs engage solely in transportation work, driving passengers on intrastate and interstate roads, and on the first or last leg of their interstate travel, allowing passengers to begin or finish their trips. Therefore, Plaintiffs' engagement in interstate commerce is not incidental, but essential to their work.

14

In sum, weighing the Lenz factors and considering that some of Plaintiffs' passengers are in continuity of motion in interstate travel, the court finds that Plaintiffs are within a class of transportation workers excluded from coverage by Section 1 of the FAA. Accordingly, the FAA does not apply to their agreement with Lyft.

B.  Massachusetts Uniform Arbitration Act

Lyft argues that, even if the FAA does not apply, the court should still compel Plaintiffs to arbitrate their claims, pursuant to the Massachusetts Uniform Arbitration Act. M.G.L. c. 251, § 1. Defs' Reply 8-9 [#52].

Plaintiffs contend that since the FAA exempts Plaintiffs from a motion to compel arbitration brought under that statute, the court should find the arbitration clause unenforceable. Pls' Opp'n 15 [#37] (citing Rittman v. Amazon.com, Inc., 383 F.Supp.3d 1196, 1203 (W.D. Wash. 2019)). Defendants respond that if federal law does not apply, the court should simply apply choice of law principles. As in Waithaka, the court finds that Plaintiffs agreed to arbitrate, and accordingly, turns to the question of what law to apply. 404 F.Supp.3d at 345. Here, both sides agree that if the court does determine what choice of law to apply, Massachusetts law should apply. Pls' Opp'n 17-18 [#37]; Defs' Reply 8-9 [#52]. The court proceeds accordingly.

Generally, under Massachusetts law, arbitration clauses are considered valid and enforceable. The court must, however, separately consider whether the class action waiver in the agreement is enforceable as the court is the proper forum for such a challenge. Feeney v. Dell Inc., 454 Mass. 192, 199-200 (2009) ("Feeney I"); see also Ex. A at § 17(b) (Ayanbule Decl.) [#18-1] ("Notwithstanding any other provision of this Agreement, the Arbitration Agreement or the AAA Rules, disputes regarding the scope, applicability enforceability, revocability or validity

of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator").

In Feeney I, the Supreme Judicial Court ("SJC") concluded that class action waivers, like the one in Lyft's Terms, "contravenes Massachusetts public policy." 454 Mass. at 199. The court explained that "public policy sometimes outweighs the interest in freedom of contract, and in such cases the contract will not be enforced." Id. at 200. The court further stated that "'[p]ublic policy' in this context refers to a court's conviction, grounded in legislation and precedent, that denying enforcement of a contractual term is necessary to protect some aspect of the public welfare." Id. (citations omitted). "[E]xpressions of three branches of Massachusetts government indicate that the public policy of the Commonwealth strongly favors G.L. c. 93A class actions." Id.

The SJC subsequently found this public policy applicable to Wage Act cases, noting the "very legitimate policy rationales underlying the Legislature's decision to provide for class proceedings under the Wage Act," including "the deterrent effect of class action lawsuits and, unique to the employment context, the desire to allow one or more courageous employees the ability to bring claims on behalf of other employees who are too intimidated by the threat of retaliation and termination to exercise their rights under the Wage Act." Machado v. System4 LLC, 465 Mass. 508, 515, n.12 (2013) (citing Salvas v. Wal-Mart Stores, Inc., 452 Mass. 337, 369 (2008)).

As Plaintiffs' note, see Pls. Opp'n at 17-19 [#37], Feeney I was abrogated as to arbitration agreements under the FAA by the Supreme Court's decision in AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011). However, while the rule in Feeney 1 prohibiting class action waivers based on public policy is preempted when the FAA applies to a contract, see

16

Feeney v. Dell Inc., 465 Mass. 470, 471-72 (2013) ("Feeney II") and Machado, 465 Mass. at 516, the court finds no basis for concluding that Feeney I's rule against class action waivers is abrogated where the FAA does not apply.

Defendants focus on the SJC's analysis for agreements covered by the FAA. In those cases, "any invalidation of an arbitration agreement on public policy grounds following Concepcion must be based not on the public policy favoring class actions manifested in M.G.L. c. 93A, § 9(2), and M.G.L. c. 149, § 150, which the FAA will preempt,[] but instead on a public policy opposing exculpatory contracts, which under certain conditions can coexist with the FAA." Machado, 465 Mass. at 516 (quoting Feeney II, 465 Mass. at 500–503) (footnote omitted). Defendants state that this public policy consideration, about exculpatory contracts, is not frustrated here, where Plaintiffs may seek significant damages, treble damages, attorney's fees and costs. Defs' Reply 9 n.23 [#52]. But this response ignores the point raised by Plaintiffs, namely, that Feeney I is still good law for agreements that are not covered by the FAA, and that the public policy prohibiting class action waivers precludes arbitration here.

IV.     Conclusion

The court finds that Plaintiffs' arbitration agreements are not subject to the FAA as Plaintiffs fall within the Section 1 exemption, and that the class action waiver in the arbitration agreement between the parties is not enforceable under Massachusetts law as it contravenes Massachusetts' public policy against class action waivers of Wage Act claims.

Accordingly, Defendants' Motion to Compel Arbitration and Stay Proceedings Pending Arbitration [#16] is DENIED.

IT IS SO ORDERED.

Date:   March 27, 2020                                          /s/ Indira Talwani
                                                                United States District Judge